1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Richard Lyon (Cal. Bar No. 229288)
rick@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Martin Brenner (Cal. Bar No. 333540)
martin@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

EMILY CHEBUL, individually and on behalf of all others similarly situated,

     *Plaintiff*,

v.

TUFT & NEEDLE, LLC,

     *Defendant*.

Case No. 2:24-cv-02707-JLS-MAR

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF LAW IN SUPPORT THEREOF**

**REDACTED VERSION**

# Table of Contents

I.     Introduction. ...................................................................................................... 1

II.    Background. ..................................................................................................... 1

    A.    Fake discounts are illegal. ............................................................ 1

    B.    Tuft & Needle's fake discounts. .................................................. 2

    C.    Plaintiff's claims. ........................................................................ 3

III.    The proposed class. ....................................................................................... 3

IV.    The proposed class satisfies Rule 23(a). ...................................................... 3

V.    Because Rule 23(b)(3) is satisfied, the Court should certify a damages class. ............................. 5

    A.    Common issues predominate liability. ......................................... 5

        1.    All class members were shown the same deceptive statements. ........................... 6

        2.    Liability for the deception-based claims can be established classwide. ................. 6

        3.    Liability for the FAL section 17501 claim can be established classwide. .............. 8

        4.    Liability for the contract and warranty claims can be established classwide. ........................... 9

        5.    Liability for the quasi-contract claim can be established classwide. ................... 10

    B.    Common questions predominate materiality and reliance. ........................... 10

    C.    Common questions predominate damages. ................................... 12

        1.    Price premium damages model (all claims). ........................... 12

        2.    Expectation damages (legal claims). ....................................... 14

        3.    Rescission and restitution (equitable claims only). ................ 15

    D.    A class action is a superior way to resolve this controversy. ................. 17

VI.    Because Rule 23(b)(2) is satisfied, the Court should certify an injunction class, too. ................. 17

VIII.    Conclusion. .................................................................................................. 18

# Table of Authorities

**Cases**

*All. Mortg. Co. v. Rothwell*,
  10 Cal. 4th 1226 (Cal.4th 1995) ..................................................................... 13

*ALLTEL Info. Servs. v. FDIC*,
  194 F.3d 1036 (9th Cir. 1999) ........................................................................ 15

*Astiana v. Kashi Co.*,
  291 F.R.D. 493 (S.D. Cal. 2013) .................................................................... 10

*B.K. v. Snyder*,
  922 F.3d 957 (9th Cir. 2019) .......................................................................... 17

*Bally v. State Farm Life Ins. Co.*,
  335 F.R.D. 288 (N.D. Cal. 2020)............................................................ 4, 7, 12

*Banks v. R.C. Bigelow, Inc.*,
  2024 U.S. Dist. LEXIS 119458 (C.D. Cal. July 8, 2024) ................................ 11

*Bradach v. Pharmavite, LLC*,
  735 F. App'x 251 (9th Cir. 2018) .................................................................... 11

*Branca v. Nordstrom, Inc.*,
  2015 U.S. Dist. LEXIS 176888, (S.D. Cal. Oct. 9, 2015) ................................. 2

*Brazil v. Dell Inc.*,
  No. 5:07-cv-01700-RMW (N.D. Cal. Dec. 21, 2010) ..................................... 11

*Broomfield v. Craft Brew Alliance, Inc.*,
  2018 U.S. Dist. LEXIS 177812 (N.D. Cal. Sept. 25, 2018) ............................ 10

*Bush v. Rust-Oleum Corp.*,
  2024 U.S. Dist. LEXIS 20131 (N.D. Cal. Feb. 5, 2024) ................................. 18

*Cabrera v. Bayer Healthcare LLC*,
  2024 U.S. Dist. LEXIS 31709 (C.D. Cal. Feb. 23, 2024)................................ 10

*Calderon v. Kate Spade & Co., LLC*,
  2020 U.S. Dist. LEXIS 38510 (S.D. Cal. Mar. 5, 2020) ................................. 16

*Capaci v. Sports Rsch. Corp.*,
  2022 U.S. Dist. LEXIS 72856 (C.D. Cal. Apr. 14, 2022) ................................. 5

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013)................................................................. 12, 14, 15, 17

*Datta v. Asset Recovery Sols., LLC*,
  2016 U.S. Dist. LEXIS 36446 (N.D. Cal. Mar. 18, 2016) .................................................. 4

*Dickey v. Advanced Micro Devices, Inc.*,
  2019 U.S. Dist. LEXIS 8740 (N.D. Cal. Jan. 17, 2019) ........................................... 3, 4, 17

*DZ Rsrv. v. Meta Platforms, Inc.*,
  96 F.4th 1223 (9th Cir. 2024) .............................................................................................. 11

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) ................................................................................................. 5

*Ewert v. eBay, Inc.*,
  2010 U.S. Dist. LEXIS 108838 (N.D. Cal. Sept. 30, 2010) .................................................. 9

*FTC v. Figgie Int'l*,
  994 F.2d 595 (9th Cir. 1993) ............................................................................................... 16

*Gold v. Lumber Liquidators, Inc.*,
  323 F.R.D. 280 (N.D. Cal. 2017) ....................................................................................... 4, 7

*Gunaratna v. Dennis Gross Cosmetology LLC*,
  2023 U.S. Dist. LEXIS 60796 (C.D. Cal. Apr. 4, 2023). ..................................................... 14

*Hadley v. Kellogg Sales Co.*,
  324 F. Supp. 3d 1084 (N.D. Cal. 2018) ............................................................................ 7, 11

*Hansen v. Newegg.com Americas, Inc.*,
  25 Cal. App. 5th 714 (Cal. Ct. App. 2018) .......................................................................... 11

*Hinojos v. Kohl's Corp.*,
  718 F.3d 1098 (9th Cir. 2013) ............................................................................................. 11

*In re Conagra Foods, Inc.*,
  302 F.R.D. 537 (C.D. Cal. 2014). ........................................................................................ 17

*In re Pepperdine Univ. Tuition & Fees Covid-19 Refund Litig.*,
  2023 U.S. Dist. LEXIS 178028 (C.D. Cal. Sept. 26, 2023). ............................................... 10

*In re Pfa Ins. Mktg. Litig.*,
  2021 U.S. Dist. LEXIS 244526 (N.D. Cal. Nov. 3, 2021) ................................................... 17

*Jacobs v. La-Z-Boy Inc.*,
  2024 U.S. Dist. LEXIS 208219 (C.D. Cal. Nov. 14, 2024) .................................................... 7

*Knapp v. Art.com, Inc.*,
  2016 U.S. Dist. LEXIS 78128, (N.D. Cal. June 15, 2016 ....................................................... 2

*Krommenhock v. Post Foods, LLC*,
   334 F.R.D. 552 (N.D. Cal. 2020)..................................................................... 11

*Krueger v. Wyeth, Inc.*,
   396 F. Supp. 3d 931 (S.D. Cal. 2019)............................................................. 16

*Kumandan v. Google LLC*,
   2022 U.S. Dist. LEXIS 247427 (N.D. Cal. Dec. 16, 2022)............................ 13

*Kumar v. Salov N. Am. Corp.*,
   2016 U.S. Dist. LEXIS 92374 (N.D. Cal. July 15, 2016)........................ 7, 10

*Kwikset Corp. v. Super. Ct.*,
   51 Cal. 4th 310 (Cal. 2011)............................................................................ 15

*Lambert v. Nutraceutical Corp.*,
   870 F.3d 1170 (9th Cir. 2017) ....................................................................... 12

*Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*,
   244 F.3d 1152 (9th Cir. 2001)......................................................................... 5

*Lytle v. Nutramax Labs., Inc.*,
   114 F.4th 1011 (9th Cir. 2024) ...................................................................... 12

*Makaeff v. Trump Univ., Ltd. Liab. Co.*,
   309 F.R.D. 631 (S.D. Cal. 2015) ................................................................... 12

*Martin v. Monsanto Co.*,
   2017 U.S. Dist. LEXIS 135351 (C.D. Cal. Mar. 24, 2017)........................... 15

*McMorrow v. Mondelēz Int'l, Inc.*,
   2021 U.S. Dist. LEXIS 42885 (S.D. Cal. Mar. 8, 2021) ............................... 13

*Munning v. Gap, Inc.*,
   2016 U.S. Dist. LEXIS 149886 (N.D. Cal. Oct. 28, 2016)...................... 2, 7, 10

*Olean Wholesale Grocery Coop., Inc. v.Bumble Bee Foods LLC*,
   31 F.4th 651 (9th Cir. 2022) .......................................................................... 18

*Openwave Sys. v. Myriad Fr. S.A.S.*,
   2011 U.S. Dist. LEXIS 69797 (N.D. Cal. June 29, 2011) .............................. 9

*Prescott v. Reckitt Benckiser LLC*,
   2022 U.S. Dist. LEXIS 135329 (N.D. Cal. July 14, 2022)............................. 13

*Pulaski & Middleman, LLC v. Google, Inc.*,
   802 F.3d 979 (9th Cir. 2015) ......................................................................... 12

*Real v. Y.M.I. Jeanswear, Inc.*,
    2017 U.S. Dist. LEXIS 237643, (C.D. Cal. Sept. 1, 2017) ................................ 2

*Safransky v. Fossil Grp., Inc.*,
    2018 U.S. Dist. LEXIS 60946, (S.D. Cal. Apr. 9, 2018) ................................ 2

*Sharpe v. Puritan's Pride, Inc.*,
    466 F. Supp. 3d 1066 (N.D. Cal. 2020) ................................ 14

*Simon v. Carter's, Inc.*,
    2020 U.S. Dist. LEXIS 265097 (N.D. Cal. July 13, 2020) ................................ 16

*Spann v. J.C. Penney Corp.*,
    2015 U.S. Dist. LEXIS 42545 (C.D. Cal. Mar. 23, 2015) ................ 4, 5, 7, 9, 11, 15, 16, 17

*Stathakos v. Columbia Sportswear Co.*,
    2017 U.S. Dist. LEXIS 72417 (N.D. Cal. May 11, 2017) ................................ 13

*Stearns v. Ticketmaster Corp.*,
    655 F.3d 1013 (9th Cir. 2011) ................................ 11

*Vaccarino v. Midland Nat'l Life Ins. Co.*,
    2013 U.S. Dist. LEXIS 88612 (C.D. Cal. June 17, 2013); ................................ 9

*Vizcarra v. Michaels Stores*,
    710 F. Supp. 3d 718, (N.D. Cal. 2024) ................................ 2, 7

*Wiener v. Dannon Co.*,
    255 F.R.D. 658 (C.D. Cal. 2009) ................................ 13

*Wolph v. Acer Am. Corp.*,
    272 F.R.D. 477 (N.D. Cal. 2011) ................................ 5

**Statutes**

Cal. Bus. & Prof. Code § 17200 ................................ 2

Cal. Bus. & Prof. Code § 17500 ................................ 2

Cal. Bus. & Prof. Code § 17501 ................................ 2, 11

Cal. Civ. Code § 1770 (a)(13) ................................ 2, 3, 11

**Regulations**

16 C.F.R. § 233.1(a) ................................ 1, 11

## NOTICE OF MOTION AND MOTION

Please take notice that on September 26, 2025, Plaintiff Emily Chebul will and hereby does move the Court to certify this case as a class action. Plaintiff seeks to certify a class as defined in the memorandum of law. Plaintiff also moves for her appointment as class representative and for the appointment of Dovel & Luner LLP as class counsel. The motion is based on the attached memorandum of law, and the declarations, exhibits, and expert reports submitted herewith.

## I.    Introduction.

Tuft & Needle markets and sells mattresses online through its website. It prominently advertises promotions for its mattresses across its website and shows purported discounts to its customers, including in the shopping cart and checkout pages shown to each customer before they place an order. Customers are told that the regular price of a selected mattress was, say, $1,000, but because of a 20% discount, they would pay only $800. But these advertised discounts are not discounts at all because the purported regular prices are not really the regular prices. Instead, the mattresses are regularly available at the lower discounted prices. ███████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████ So customers who bought during Tuft & Needle's supposed sales did not really get discounts on their purchases. The supposed discount prices they paid *were* the regular prices that consumers regularly paid.

Plaintiff and her counsel have and will continue to adequately represent the proposed classes. Plaintiff proposes several valid classwide damages models, and seeks an injunction that would provide classwide relief against Tuft & Needle's future deceptive discount-and-price advertising. As a result, Plaintiff's claims meet all the requirements for class certification. The Court should certify a Rule 23(b)(3) damages class and a Rule 23(b)(2) injunction class.

## II.    Background.

### A.    Fake discounts are illegal.

Consumers love to get a good deal. Declaration of Bruce G. Silverman ("Silverman Decl.") ¶¶36, 49. If consumers believe that they are getting a discount, they are more likely to make a purchase, and are willing to pay more for it. *Id.* ¶71; *id.* ¶¶50-51.

Because customers love discounts, companies have long used limited-time percent-off sales to boost their sales. *E.g.*, *id.* ¶¶52-54; 16 C.F.R. § 233.1(a) ("One of the most commonly used forms of bargain advertising is to offer as reduction from the advertiser's own former price for an article."). And some companies have taken advantage of customers' love for discounts by making up fake, inflated prices for their products and then offering fake discounts off those inflated prices.

California, however, has long prohibited deceptive discounts. California's Consumer Legal Remedies Act prohibits "false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions." Cal. Civ. Code § 1770 (a)(13). California's False Advertising Law prohibits advertising any price "as a former price of any advertised thing" unless that price "was the prevailing market price" in the three months before the advertisement. Cal. Bus. & Prof. Code § 17501. And, because fake discounts are unfair and deceptive, they also run afoul of California's more general prohibitions on unfair and deceptive practices. Cal. Bus. & Prof. Code § 17500 (prohibiting "untrue or misleading" advertising); Cal. Bus. & Prof. Code § 17200 (UCL) (prohibiting "unlawful, unfair or fraudulent" business practices including deceptive, untrue, or misleading advertising); *see, e.g.*, *Knapp v. Art.com, Inc.*, 2016 U.S. Dist. LEXIS 78128, at \*8-13 (N.D. Cal. June 15, 2016 (fake discounts violate FAL section 17501's specific prohibitions and also FAL section 17500's more general prohibition on untrue or misleading advertising); *Real v. Y.M.I. Jeanswear, Inc.*, 2017 U.S. Dist. LEXIS 237643, at \*15 (C.D. Cal. Sept. 1, 2017) (plaintiff's fake discount allegations stated claims under the FAL, CLRA, and UCL); *Branca v. Nordstrom, Inc.*, 2015 U.S. Dist. LEXIS 176888, at \*26 (S.D. Cal. Oct. 9, 2015) (same); *Safransky v. Fossil Grp., Inc.*, 2018 U.S. Dist. LEXIS 60946, at \*38 (S.D. Cal. Apr. 9, 2018) (alleged fake discount scheme violated multiple provisions of CLRA); *Munning v. Gap, Inc.*, 2016 U.S. Dist. LEXIS 149886, at \*23 (N.D. Cal. Oct. 28, 2016) (alleged fake discount scheme violated the UCL and FAL and breached contract and warranty); *Vizcarra v. Michaels Stores*, 710 F. Supp. 3d 718, 731 (N.D. Cal. 2024) (same).

### B.    Tuft & Needle's fake discounts.

Tuft & Needle sells mattress products, including through its website. Declaration of Richard Lyon ("Lyon Decl."), Ex. 2 (Graffius 30(b)(6)) at 15:17-23; 17:3-10. It advertises purported regular list prices for each of its products, as well as purported discounts off those list prices. *Id.* at 43:23-44:3; 45:3-6; 46:9-13; 46:24-48:5; 50:22-51:2. But these purported discounts are routinely available, far more often than they are not. Silverman Decl., ¶60; Declaration of Colin B. Weir ("Weir Decl.") ¶¶91-93 (summarizing transaction data). And, because of this, the overwhelming majority of Tuft & Needle's mattress sales are made at a significant discount from the list price. Weir Decl., ¶93 ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1  ████████████████████████ As a result, the list prices that Tuft & Needle advertises are not true

2  prices that people usually and customarily pay to buy their mattresses. They are made up prices at which

3  only a small number of sales are made. *Id.*; Silverman Decl., ¶¶79-81. And, consumers who receive a

4  supposed "discount" or buy during a supposed "sale" do not actually receive the discounts or savings

5  that were advertised and promised to them. *Id.*

6      **C.    Plaintiff's claims.**

7      Like all other class members, Plaintiff bought a mattress from Tuft & Needle through its website

8  at a deceptive discount. They assert claims under section 1770(a)(13) of the CLRA and section 17501 of

9  the FAL, both of which specifically prohibit fake discounting. First Amended Complaint ("FAC") ¶71

10 (FAL § 17501), ¶86 (CLRA § 1770(a)(13)). They also assert claims under California's broader

11 consumer protection statutes generally prohibiting unfair, false, and deceptive practices (each prong of

12 the UCL, section 17500 of the FAL, and sections 1770(a)(5) and (a)(9) of the CLRA), which courts have

13 repeatedly found to prohibit fake discounts. *See id.* ¶¶65-76 (FAL), ¶¶77-95 (CLRA), ¶¶96-112 (UCL).

14 And they assert common law fraud, breach of contract, breach of warranty, and quasi-contract claims.

15 *See id.* ¶¶113-122 (contract), ¶¶123-129 (express warranty), ¶¶130-136 (quasi-contract / unjust

16 enrichment), ¶¶137-154 (negligent and intentional misrepresentation).

17 **III.    The proposed class.**

18     Plaintiff seeks to certify the following class: All persons who, during the class period, purchased

19 one or more mattress product advertised at a discount from Defendant's website while in the State of

20 California.

21     Excluded from the Class are persons who received a full refund on their purchase, any Judge or

22 Magistrate presiding over this case, Defendant and its employees or affiliates, anyone who opts out,

23 anyone who has previously released their claims, and Plaintiff's and Defendant's counsel and experts.

24 **IV.    The proposed class satisfies Rule 23(a).**

25     A certified class must meet the requirements of Rule 23(a). Each requirement is met here.

26     **A.    The proposed class is sufficiently numerous.**

27     Numerosity is satisfied "when the class comprises 40 or more members." *Dickey v. Advanced

28 Micro Devices, Inc.*, 2019 U.S. Dist. LEXIS 8740, at *7 (N.D. Cal. Jan. 17, 2019) (internal quotations

omitted). Here, the proposed class far exceeds 40 members. Weir Decl., ¶93 (transactional data shows that there have been approximately ▮▮▮▮ discounted mattresses purchased on Defendant's website from the State of California during the class period). So numerosity is satisfied.

**B.    There are many common questions of law and fact.**

Rule 23(a)(2) requires "questions of law or fact common to the class.'" *Dickey*, 2019 U.S. Dist. LEXIS 8740, at *7. "Commonality is satisfied where claims ... depend upon a common contention … of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Bally v. State Farm Life Ins. Co.*, 335 F.R.D. 288, 301 (N.D. Cal. 2020) (quotes omitted). The required showing is "relatively minimal." *Gold v. Lumber Liquidators, Inc.*, 323 F.R.D. 280, 288 (N.D. Cal. 2017) (quotes omitted).

Here, as described in detail in the predominance section below, there are numerous issues of law and fact common to the proposed class. *See* Section V. For example, each claim turns on whether Tuft & Needle's advertised list prices were the bona fide regular prices at which its products were typically sold, or deceptive prices at which its products were rarely sold. *See Spann v. J.C. Penney Corp.*, 307 F.R.D. 508, 518 (C.D. Cal. 2015) (commonality satisfied in similar fake discount case). So commonality is met here.

**C.    Plaintiff is typical.**

"Typicality is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability. This requirement is permissive and requires only that the representative's claims be reasonably coextensive with those of the absent class members; they need not be substantially identical." *Datta v. Asset Recovery Sols., LLC*, 2016 U.S. Dist. LEXIS 36446, at *8 (N.D. Cal. Mar. 18, 2016) (cleaned up).

Here, Plaintiff and absent class members' claims all arise from the same course of events: Tuft & Needle's practice of advertising on its website supposed regular prices for its mattresses; supposed discounts off those supposed regular prices; and supposed savings from those supposed discounts. *See* Section II(A)-(B); Section V. Plaintiff and absent class members will make the same legal arguments to prove Tuft & Needle's liability: because Tuft & Needle's discounts are routinely available and its

mattresses are more often sold at the discounted prices than the supposed list prices, Tuft & Needle's supposed list prices, supposed discounts, and supposed savings are fake. As a result, Tuft & Needle's advertising is deceptive, unfair, and illegal.

So, Plaintiff's claims are reasonably coextensive with those of the proposed class. Plaintiff is typical. *See Spann*, 307 F.R.D. at 519 (typicality met in similar fake discount case).

### D.    Plaintiff and her counsel are adequate.

To assess adequacy, courts ask: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011).

Here, Plaintiff and her counsel have no conflicts of interest with other class members. *See* Declaration of Emily Chebul ("Chebul Decl."), ¶3; Lyon Decl., ¶6. And, they will vigorously prosecute the case. *Id.* Moreover, Plaintiff's counsel has substantial experience (and success) litigating consumer class actions and deceptive discount cases. Lyon Decl., ¶¶2-5. So, Plaintiff and her counsel are adequate.

## V.    Because Rule 23(b)(3) is satisfied, the Court should certify a damages class.

### A.    Common issues predominate liability.

Predominance "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues. When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Capaci v. Sports Rsch. Corp.*, 2022 U.S. Dist. LEXIS 72856, at *26-27 (C.D. Cal. Apr. 14, 2022) (internal quotations omitted).

Some "variation among" class members' claims or "potential difficulty in proof" does not "defeat predominance." *Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) (internal quotations omitted). And, any "doubts regarding the propriety of class certification generally should be resolved in favor of certification." *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 481 (N.D. Cal. 2011).

1    Here, for all of Plaintiff's claims, liability turns exclusively on common questions that can be

2    answered with common proof.

3              **1.      All class members were shown the same deceptive statements.**

4          To start, all of Plaintiff's claims arise from the same allegedly deceptive advertising: Tuft &

5    Needle's representations about its supposed regular prices, its supposed discounts, and the supposed

6    savings its customers received by purchasing during a supposed sale. And, those same statements were

7    made to each and every class member right before they placed their order.

8          For the entire class period, Tuft & Needle made the same representations to each and every class

9    member about the list prices, discounts, and supposed savings associated with each product in their

10   order. Lyon Decl., Ex. 2 at 43:23-44:3; 45:3-6; 46:9-13; 46:24-48:5; 50:22-51:2. As Tuft & Needle

11   explained, every ███████████████████████████████████████████████████████

12   ████████████████████████████████████████████████████████████████████

13   ████████████████████████████████████████████████████████████

14   ██████████████████████████████. *Id*. 50:22-51:2.

15         So each class member was exposed to materially the same deceptive statements.

16             **2.      Liability for the deception-based claims can be established classwide.**

17         For most of Plaintiff's claims—under the CLRA, section 17500 of the FAL, the fraudulent prong

18   of the UCL, and for misrepresentation—Plaintiff's central contention is that Tuft & Needle's classwide

19   advertising is false. Plaintiff contends that Tuft & Needle's classwide statements about its list prices,

20   discounts, and savings falsely conveyed that its customers were getting genuine discounts off of the real

21   regular prices that it usually charges for its products, when in fact they were not. So, for those claims,

22   liability will turn on:

23   • what Tuft & Needle's advertising conveys (*i.e.*, whether it conveys that the advertised list

24      prices are the prices at which it usually sells its products and that consumers are getting a

25      genuine discount off those regular prices); and

26   • whether this is true or not.

27   Each of these questions can be answered classwide.

28

What an advertisement conveys is based on the "reasonable consumer" standard. This is an "objective test" that turns on how a reasonable consumer would perceive an advertisement. *Gold*, 323 F.R.D. at 290. It ignores "the subjective understandings of individual plaintiffs," *Kumar*, 2016 U.S. Dist. LEXIS 92374, at *21, and does not require any "inquir[y] into each class member's unique circumstances." *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1101 (N.D. Cal. 2018) (internal quotes omitted). So, what Tuft & Needle's advertisements convey can be decided classwide using common evidence about how a reasonable consumer would perceive its price advertising. *See id.* at 1116 ("[D]eception . . . under the FAL, CLRA, and UCL [is] governed by an objective 'reasonable consumer' test."); *Jacobs v. La-Z-Boy Inc.*, 2024 U.S. Dist. LEXIS 208219, at *12 (C.D. Cal. Nov. 14, 2024) (applying reasonable consumer test to fake discount claims); *Munning*, 2016 U.S. Dist. LEXIS 149886, at *11 (same); *Vizcarra*, 710 F. Supp. 3d at 726 (same); *Spann.*, 307 F.R.D. at 523 (certifying fake discount class action and recognizing that "Courts often find that common questions predominate in FAL actions because they call for analysis under an objective reasonable consumer test"); *Gold*, 323 F.R.D. at 290 (California consumer protection claims are "particularly amenable to class certification" due to this "objective test").

Further, although the "merits of the class members' substantive claims are generally irrelevant to this inquiry," *Bally*, 335 F.R.D. at 296-297, Plaintiff has already developed substantial evidence demonstrating that Plaintiff is correct on the merits, including the expert testimony of Bruce Silverman, a well-regarded marketing expert. Silverman testified that Tuft & Needle's representations are "fundamentally misleading" because the "list price" "is clearly intended to communicate to customers that it is the regular price for the advertised product" and that "[o]rdinary consumers understand a list price to be a product's regular price … that consumers typically must pay to buy the product and that most people pay to buy the product." Silverman Decl., ¶¶79-81. Reasonable consumers viewing these representations "believe and expect that they are getting product worth the advertised list price, when in fact they are getting a product worth less." *Id.* ¶81.

Likewise, whether Tuft & Needle's list prices and discounts off those list prices are false, can be proven classwide, too. Tuft & Needle maintains ███████████████████████████████ ██████████████████████████████████████████████████████████



17   This evidence applies classwide, to all discounted products purchased by class members

18   throughout the entire class period. And it shows that, throughout the class period, Tuft & Needle's

19   supposed list prices, supposed discounts, and supposed savings were false. Because Tuft & Needle

20   routinely offered discounts off the list prices, the advertised list prices were not its true regular prices;

21   the true regular prices were much lower. And, class members did not receive the advertised discounts or

22   savings on their orders.

23       So, in short, for the deception-based claims, Plaintiff can establish liability classwide, using Tuft

24   & Needle's records and expert testimony that applies classwide. For those claims, common questions

25   predominate liability.

26       3.    **Liability for the FAL section 17501 claim can be established classwide.**

27       Liability can be proven classwide for Plaintiff's FAL section 17501 claims, too. Under section

28   17501, whether consumers interpret Tuft & Needle's advertised list prices as "former prices" depends

on the reasonable consumer standard and, therefore, is subject to common proof for the same reasons just discussed. *See Spann*, 307 F.R.D. at 528 (ruling, in fake discount case, that no individualized inquiry was required to determine whether defendant advertised an improper price comparison under section 17501); *e.g.*, Silverman Decl., ¶¶41, 57, 65, 76 (reasonable customers would understand list prices to be regular (former) prices).[1] Likewise, whether the advertised list prices were the prevailing market prices in the three months leading up to each class member's purchase can be calculated classwide using Tuft & Needle's own transaction data.[2] *See* Weir Decl., ¶¶16, 91-93;[3] *Spann*, 307 F.R.D. at 527 (defendant's sales data "provides an appropriate basis upon which to determine their prevailing market prices."). So common questions predominate liability on this claim, too.

    **4.**  **Liability for the contract and warranty claims can be established classwide.**

   For the breach of contract and warranty claims, Plaintiff contends that Tuft & Needle promised and warranted goods worth the advertised list price, but delivered goods worth less. FAC ¶¶48-52. Here too, what Tuft & Needle's advertisements promised or warranted is governed by the objective, reasonable consumer standard and can therefore be decided classwide. *Openwave Sys. v. Myriad Fr. S.A.S.*, 2011 U.S. Dist. LEXIS 69797, at *9 (N.D. Cal. June 29, 2011) ("Under California law" contract interpretation is an "objective" standard that "does not depend on the parties' subjective intents") (emphasis omitted). This is why courts "have long found" that these claims "present the classic case for treatment as a class action." *Vaccarino v. Midland Nat'l Life Ins. Co.*, 2013 U.S. Dist. LEXIS 88612, at *57-58 (C.D. Cal. June 17, 2013); *Ewert v. eBay, Inc.*, 2010 U.S. Dist. LEXIS 108838, at *20-21 (N.D. Cal. Sept. 30, 2010) (predominance requirement satisfied because the "court need not delve into the actual knowledge of individual class members" to interpret the contract terms); *Cabrera v. Bayer*

---

[1] Section 17501 applies to "former prices." Cal. Bus. & Prof. Code § 17501.

[2] Section 17501 prohibits advertising former prices "unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement." Cal. Bus. & Prof. Code § 17501

[3] ████████████████████████████

*Healthcare LLC*, 2024 U.S. Dist. LEXIS 31709, at \*22-23 (C.D. Cal. Feb. 23, 2024) (same for express warranty claims). And, whether Tuft & Needle's contractual promises and warranties were fulfilled— whether it delivered products worth the advertised list price—turns on whether the goods were in fact usually sold at the advertised list price or not, which again can be decided classwide using Tuft & Needle's data.

### 5. Liability for the quasi-contract claim can be established classwide.

For the quasi-contract claims, Plaintiff must establish "(1) [Tuft & Needle's] receipt of a benefit and (2) unjust retention of that benefit at the [Plaintiff's] expense." *In re Pepperdine Univ. Tuition & Fees Covid-19 Refund Litig.*, 2023 U.S. Dist. LEXIS 178028, at \*26 (C.D. Cal. Sept. 26, 2023). These elements turn on Tuft & Needle's "conduct and raise the same legal issues for all class members." *Astiana v. Kashi Co.*, 291 F.R.D. 493, 505 (S.D. Cal. 2013) (certifying quasi-contract claim in false advertising case and collecting cases). That Tuft & Needle received a benefit (more money) from the challenged representations can be established classwide. *See infra* Section V(C)(1). And whether it is unjust for Tuft & Needle to retain that benefit likewise does not depend on any individual question, but rather whether its fake discounting scheme is unfair or fraudulent on the whole. *See Cabrera*, 2024 U.S. Dist. LEXIS 31709, at \*25-26 (ruling that common issues predominate for quasi-contract claim in consumer fraud class action); *see* above (falsity can be established classwide).

\* \* \*

In sum, for all claims, liability turns on issues that can be decided classwide, using common proof. Common questions predominate liability.

### B. Common questions predominate materiality and reliance.

For each of Plaintiff's claims, "questions of materiality and reliance are determined based upon the reasonable consumer standard, not the subjective understandings of individual plaintiffs." *Kumar v. Salov N. Am. Corp.*, 2016 U.S. Dist. LEXIS 92374, at \*21 (N.D. Cal. July 15, 2016) (UCL, FAL, and CLRA claims); *Broomfield v. Craft Brew Alliance, Inc.*, 2018 U.S. Dist. LEXIS 177812 at \*39 (N.D. Cal. Sept. 25, 2018) (this standard "appl[ies] equally to consumer law, common law fraud, and negligent misrepresentation claims") (citation omitted); *Munning,* U.S. Dist. LEXIS 149886, at \*22-23 (same for breach of contract claim) ("[T]his Court finds the Defendants' advertised price reductions were

material."); Lyon Decl., Ex. 3 (*Brazil v. Dell Inc.*, No. 5:07-cv-01700-RMW, Dkt. 306) at 6-9 (in a fake discount case, finding predominance satisfied for a California "intentional misrepresentation" claim). And when, like here, "material misrepresentations have been made to the entire class, an inference of reliance arises as to the class." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022 (9th Cir. 2011) (cleaned up). So, materiality and reliance will turn on whether the misrepresentations Tuft & Needle made to all class members were "objectively material to a reasonable consumer." *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 565 (N.D. Cal. 2020).

Because that question "will not require the court to investigate class members' individual interaction[s]," and will instead be decided based on an objective standard, it can be decided classwide. *Bradach v. Pharmavite, LLC*, 735 F. App'x 251, 254-55 (9th Cir. 2018) (cleaned up) (noting that such claims are "ideal for class certification" for this reason); *Spann*, 307 F.R.D. at 522-23 (in fake discount case, causation and materiality are determined under the reasonable consumer standard and predominate over common questions). And, although proof of materiality is not required at this stage, *DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1235 (9th Cir. 2024), Plaintiff already has come forward with classwide evidence that Tuft & Needle's misrepresentations are material to reasonable consumers. *See supra*; Silverman Decl., ¶¶72-76; *Hadley,* 324 F. Supp. 3d at 1115 (Silverman's testimony is common evidence of materiality).

Plus, "the legislature's decision to prohibit a particular misleading advertising practice is evidence that the legislature has deemed that the practice constitutes a 'material' misrepresentation, and courts must defer to that determination." *Hinojos v. Kohl's Corp*., 718 F.3d 1098, 1107 (9th Cir. 2013). And, "both state and federal law specifically prohibit retailers from advertising false 'sales.'" *Id.* (citing CLRA § 1770(a)(13)) FAL §17501, and 16 C.F.R. § 233.1(a) (Federal Trade Commission regulations); *Hansen v. Newegg.com Americas, Inc.*, 25 Cal. App. 5th 714, 731 (Cal. Ct. App. 2018) ("[O]ur legislature's decision to prohibit the use of false and misleading former price information shows that it has deemed such misrepresentations to be material."). So, by establishing that Tuft & Needle advertised its misleading price information classwide, Plaintiff will establish materiality classwide, too. *See Banks v. R.C. Bigelow, Inc*., 2024 U.S. Dist. LEXIS 119458, at *20-21 (C.D. Cal. July 8, 2024) ("when the

1  legislature has seen fit to specifically outlaw certain statements in order to protect consumers, such

2  statements are material as a matter of law").

3  **C.    Common questions predominate damages.**

4        If a plaintiff "present[s] a model of damages that (1) identifies damages that stem from the

5  defendant's alleged wrongdoing and (2) is 'susceptible of measurement across the entire class,'"

6  predominance is satisfied at this stage. *Bally*, 335 F.R.D. at 304 (quoting *Comcast Corp. v. Behrend*, 569

7  U.S. 27, 34-38 (2013)); *Lytle v. Nutramax Labs., Inc.,* 114 F.4th 1011, 1027 (9th Cir. 2024) (quotes

8  omitted) (*Comcast* has "generally been construed to stand for the unremarkable proposition that

9  plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the

10  legal liability.").

11        To run afoul of *Comcast*, a damages model must be so "untethered from plaintiff's theory of

12  liability" that it "has no possibility of demonstrating the amount of damages in a particular case." *Id*.

13  Said differently, a model only violates *Comcast* if it is so disconnected from the liability theory that it is

14  "arbitrary." *See Pulaski & Middleman, LLC v. Google, Inc*., 802 F.3d 979, 988 (9th Cir. 2015) (quotes

15  omitted); *Makaeff v. Trump Univ., Ltd. Liab. Co*., 309 F.R.D. 631, 637 (S.D. Cal. 2015) (a damages

16  model satisfies *Comcast* so long as it is not an "arbitrary measurement" wholly divorced from the

17  liability theory); *Lambert v. Nutraceutical Corp*., 870 F.3d 1170, 1183 (9th Cir. 2017) ("[c]lass wide

18  damages calculations" under California's consumer protection statutes are "particularly forgiving," and

19  "California law requires only that some reasonable basis of computation of damages be used").

20        Here, Plaintiff has three alternative damages models. Each measures harm to the class that results

21  directly from Tuft & Needle's alleged fake discount scheme. And each is susceptible to measurement

22  across the entire class. So *Comcast* is satisfied.

23        **1.    Price premium damages model (all claims).**

24        Tuft & Needle's fake discounting artificially increases demand for Tuft & Needle's products.

25  This allows Tuft & Needle to charge more than it otherwise could, causing class members to pay extra.

26  FAC ¶42. The "extra" is commonly known as a "price premium." And, in false advertising class actions,

27  courts routinely hold that class members can recover the amount of a price premium attributable to the

28  false advertising, either as damages (for legal claims) or as restitution (for equitable claims). *See*

1  *Prescott v. Reckitt Benckiser LLC*, 2022 U.S. Dist. LEXIS 135329, at *30 (N.D. Cal. July 14, 2022)

2  (price premium is an appropriate measure of restitution (for UCL, CLRA, and quasi-contract claims) and

3  damages (for CLRA claims)); *Stathakos v. Columbia Sportswear Co.*, 2017 U.S. Dist. LEXIS 72417, at

4  *33 (N.D. Cal. May 11, 2017) ("[A] proper measure of restitution could be the delta between the price

5  plaintiffs actually paid and the price a reasonable consumer would have paid absent the [deceptive]

6  reference price."); *McMorrow v. Mondelēz Int'l, Inc.*, 2021 U.S. Dist. LEXIS 42885, at *40 (S.D. Cal.

7  Mar. 8, 2021) (certifying a price premium model of "actual damages" under the CLRA); *Wiener v.*

8  *Dannon Co.*, 255 F.R.D. 658, 670 (C.D. Cal. 2009) ("Actual damages" are available for "breach of

9  express warranty claims"); *All. Mortg. Co. v. Rothwell*, 10 Cal. 4th 1226, 1241 (Cal.4th 1995)

10  ("[R]ecovery in a tort action for fraud is limited to the actual damages suffered"); *Kumandan v. Google*

11  *LLC*, 2022 U.S. Dist. LEXIS 247427, at *35 (N.D. Cal. Dec. 16, 2022) (certifying a price premium

12  model for a breach of contract claim).

13       Plaintiff's first damages model measures just this: the price premium attributable to Tuft &

14  Needle's fake discount advertising. Weir Decl., ¶17. Using "conjoint analysis," Plaintiff's expert,

15  economist Colin Weir, will calculate "the portion of the market price of the Products solely attributable

16  to Defendant's conduct," *i.e.*, the price premium that Tuft & Needle was able to charge class members

17  directly as a result of its deceptive price advertising. *Id.* Using conjoint analysis, Weir will be able to

18  "calculate the overpayment attributable to the Sales Discount as the total price of the Products." *Id.* ¶66;

19  ¶¶18-31 (describing conjoint analysis and its applications).

20       To do so, Weir will administer a consumer survey. *Id.* ¶¶32-67 (describing methodology and

21  survey design in detail). After collecting this data from a large sample of potential Tuft & Needle

22  customers, Weir will use statistical techniques to analyze this data. *Id.* ¶49; ¶¶52-67 (detailing the data

23  analysis). The analysis will generate a "statistically robust estimate of any price premium that purchasers

24  paid solely as a result of the challenged Sales Discounts," *i.e.*, the price premium attributable to Tuft &

25  Needle's advertised sales offering a discount off of Defendant's list prices. *Id.* ¶62.  The premium will

26  be expressed "as a percentage of the total price of the Products to be applicable to the various retail price

27  points in the marketplace." *Id.* ¶66. "The price premium can be applied to every sale of the product, and

28  to every Class Member, respectively." *Id.* ¶67. Using this calculated price premium and the transactional

data in Tuft & Needle's line-item reports, Weir can calculate the price premium damages classwide, both in the aggregate and for each individual class member. *Id.* ¶¶66-67, ¶87, ¶16.

Plaintiff's proposed price premium model indisputably identifies damages that result from Tuft & Needle's wrongdoing. It measures "any price premium that purchasers paid solely as a result of the challenged Sales Discounts," *id.* ¶62, *i.e.*, Tuft & Needle's "advertise[d] discount off of Defendant's list prices," *id.* ¶4, n.2. And, it is susceptible to measurement across the entire class: it can be measured classwide, for each class member, using common survey evidence: Tuft & Needle's transactional data. *Id.* ¶¶66-67, 87; *see, e.g.*, *Gunaratna v. Dennis Gross Cosmetology LLC*, 2023 U.S. Dist. LEXIS 60796, at *70 (C.D. Cal. Apr. 4, 2023) ("If there was a premium, all who purchased the Products were economically harmed."). Thus, Plaintiff's proposed price premium model satisfies *Comcast*.

### 2.    Expectation damages (legal claims).

Tuft & Needle's fake discounting harms class members a second way: it deprives class members of the benefit of their bargain. *See* FAC ¶¶48-52. Tuft & Needle promises to provide class members with mattresses having a certain list price and value (the purported regular price) for a lower, discounted price (the purchase price). *Id.* ¶48. It also promises to provide class members with a specified discount (for example, 15%) or specified savings (for example, "-$314.25") off its regular prices. *Id.* ¶45. But— because its list prices, discounts, and savings are fake—Tuft & Needle does not fulfill its promises. *E.g.*, *id.* ¶26, 52. Instead of providing class members with products worth the regular list price as promised, Tuft & Needle provides products worth less. *Id.* ¶52. And instead of providing class members with the promised discounts and savings, Tuft & Needle provides them lower discounts and savings, or none at all. *Id.* ¶¶29-30, 26, *e.g.*, *id.* ¶¶43-46. So the difference between what class members were promised and expected and what they actually got—their lost expectancy interest—is a second harm that results from Tuft & Needle's fake discounting.

And it is well established that for Plaintiff's legal claims, such expectation or "benefit-of-the-bargain" damages are recoverable. *See Sharpe v. Puritan's Pride, Inc.*, 466 F. Supp. 3d 1066, 1076 (N.D. Cal. 2020) (in a fake discount case, the CLRA allows for "benefit-of-the-bargain" damages, *i.e.*, "satisfying the expectancy interest of the defrauded plaintiff."); *ALLTEL Info. Servs. v. FDIC*, 194 F.3d 1036, 1039 (9th Cir. 1999) (contract damages may be measured through an "individual's interest in

1    having the benefit of his bargain by being put in as good a position as he would have been in had the

2    contract been performed") (cleaned up); *Martin v. Monsanto Co*., 2017 U.S. Dist. LEXIS 135351, at

3    *22-23 (C.D. Cal. Mar. 24, 2017) (same for warranty damages).

4        Plaintiff's second proposed damages model—which applies only to its legal claims[4]—will

5    measure class members' lost expectancy interest. It will calculate this by comparing the value of what

6    class members were promised and expected (a product worth the list price) with the value of what class

7    members actually received (a product that, because it is routinely on sale (X% off) is worth at least X%

8    less than the list price).

9        These damages result from the alleged wrongdoing here: the reason class members have an

10   expectancy interest that was not satisfied is that Tuft & Needle represented that its products were worth

11   the list price, when in fact they were worth less. Weir Decl., ¶¶29, 88 (according to research on

12   reference pricing, a "'comparative price advertisement, regular price $10.00, on sale $7.99, suggests a

13   monetary worth of $10.00 and a savings of $2.01'"); Silverman Decl., ¶¶66, 82.  And, these damages are

14   susceptible to measurement across the entire class. Weir Decl., ¶89. So, using this common evidence, it

15   will be "possible to calculate the difference between the 'list price' and the price with the discount

16   applied." *Id.* ¶88. It will also be possible to determine, for the entire class period, what Tuft & Needle's

17   true regular prices were. *Id.* So, for the legal claims, Plaintiff satisfies *Comcast* in this second way, too.

### 3.    Rescission and restitution (equitable claims only).

19       Tuft & Needle's fake discounting harmed Plaintiff and the class in a third way: by inducing them

20   to buy mattresses they otherwise would not have bought. *E.g.*, FAC ¶12; Chebul Decl., ¶5. This too is a

21   cognizable harm for which consumers can seek redress. *See, e.g., Kwikset Corp. v. Super. Ct.*, 51 Cal.

22   4th 310, 327-28 (Cal. 2011) (plaintiffs were injured when they made purchases they otherwise would

23   not have made based on misrepresentations); *Spann v. J.C. Penney Corp.*, 2015 U.S. Dist. LEXIS

24   42545, at *15 (C.D. Cal. Mar. 23, 2015) ("Rescission with complete restitution can be an appropriate

25   remedy" in a fake discounting case when plaintiff made purchase based on the fake discount); *Spann*,

26

27       [4] Expectation damages measure damages and, therefore, are not restitutionary. *See Sharpe*, 466
     F. Supp. 3d at 1075-76 (distinguishing benefit of the bargain damages from restitution). They are not
28   available for equitable claims.

1  307 F.R.D. at 530-31 (certifying class with rescission and refund model); *see Krueger v. Wyeth, Inc.*,

2  396 F. Supp. 3d 931, 952-54 (S.D. Cal. 2019) (full refund restitution available when plaintiff would not

3  have made the purchase absent the alleged misrepresentations); *FTC v. Figgie Int'l*, 994 F.2d 595, 606

4  (9th Cir. 1993) (full refund restitution available when "had [customers] been told the truth, perhaps they

5  would not have brought [the products] at all").

6      Plaintiff presents this third model—applicable only to her equitable claims (the UCL, unjust

7  enrichment, FAL, and CLRA claims)—to measure this harm: a rescission and full refund model. Under

8  this model, class members who were induced to make a purchase they otherwise would not have made

9  would have the option to return the products they purchased and, in exchange, receive a full refund. *See*

10 Weir Decl., ¶90.

11     Permitting class members to return the products they purchased for a full refund plainly

12 measures alleged harm stemming from Tuft & Needle's wrongdoing. The alleged harm is that Plaintiff

13 and class members bought a product they would not have bought and spent money they would not have

14 spent. And the remedy directly measures and addresses that harm by letting Plaintiff and class members

15 return the product they would not have bought and get back the money they would not have spent.

16 Moreover, Plaintiff can use common evidence—Tuft & Needle's transactional data showing what

17 products each class member purchased and how much they spent—to measure the amount of the refund

18 for each class member, classwide. Weir Decl., ¶¶90, 16. And, implementing this remedy is feasible: Tuft

19 & Needle testified that it already has processes in place to allow customers to return mattresses for a

20 refund. Lyon Decl., Ex. 2: 34:12-24, 37:6-14; Ex. 1 at 50:21-51:16 ("Tuft & Needle's return policy is

21 focused on making it easy for the consumer to return a product").

22     Several courts have recognized that this type of damages model is available in fake discount

23 cases. *See Calderon v. Kate Spade & Co., LLC*, 2020 U.S. Dist. LEXIS 38510, at *22 (S.D. Cal. Mar. 5,

24 2020) ("[T]he Court could fashion a remedy [in a deceptive discount case] by rescinding the transactions

25 and refunding the amounts."); *Simon v. Carter's, Inc.*, 2020 U.S. Dist. LEXIS 265097, at *10 (N.D. Cal.

26 July 13, 2020) (in a deceptive discount case, recission and return are available as a monetary remedy).

27 And in *Spann*, the court accepted the rescission and refund model when certifying the class because, like

28 here, the remedy can be "readily calculated using Defendant's sales numbers," and because requiring a

1  return avoids the need to measure and offset by the value of what was received. *Spann,* 307 F.R.D. at

2  530-31 (citation omitted); *In re Pfa Ins. Mktg. Litig*., 2021 U.S. Dist. LEXIS 244526, at *64-65 (N.D.

3  Cal. Nov. 3, 2021) ("[P]laintiffs have adequately shown that LSW's transactional data … can be

4  employed to effectuate any requests for rescission in a manner that would not defeat predominance.").

5                                                           \*\*\*

6           In sum: Plaintiff presents three separate damages models that each satisfy *Comcast*.

7           **D.    A class action is a superior way to resolve this controversy.**

8           Courts consider "four non-exclusive factors" to determine superiority: "(1) the interest of each

9  class member in individually controlling the prosecution or defense of separate actions; (2) the extent

10  and nature of any litigation concerning the controversy already commenced by or against the class; (3)

11  the desirability of concentrating the litigation of the claims in the particular forum; and (4) the

12  difficulties likely to be encountered in the management of a class action." *Dickey,* 2019 U.S. Dist.

13  LEXIS 8740, at *19 (cleaned up). Here, all factors support certification: (1) individual claims are small

14  relative to the cost of individual litigation and so there is little incentive for individual class members to

15  bring claims (*see, e.g.,* Chebul Decl., ¶4 (her mattress cost $1780.75)); (2) there is no other litigation

16  against Tuft & Needle commenced by the Class; (3) it makes sense to concentrate the litigation here, as

17  all class members are in California; and (4) as addressed above, because common issues predominate,

18  there are no management difficulties that would foreclose a class. A class action is superior.

19  **VI.    Because Rule 23(b)(2) is satisfied, the Court should certify an injunction class, too.**

20          The Court may certify a damages class under Rule 23(b)(3) and, also, an injunction class under

21  Rule 23(b)(2). *In re Conagra Foods, Inc.*, 302 F.R.D. 537, 573 (C.D. Cal. 2014). That is what the Court

22  should do here.

23          "Rule 23(b)(2) applies … when a single injunction … would provide relief to each member of

24  the class." *B.K. v. Snyder*, 922 F.3d 957, 971 (9th Cir. 2019) (internal quotes omitted). In deciding

25  whether to certify an injunction class under Rule 23(b)(2), courts do not "examine the viability or bases

26  of class members' claims"—they only look to "whether class members seek uniform relief from a

27  practice applicable to all of them." *Bush v. Rust-Oleum Corp*., 2024 U.S. Dist. LEXIS 20131, at *17-18

28  (N.D. Cal. Feb. 5, 2024) (quotes omitted). Nor does it matter if "some class members may have suffered

no injury or different injuries," *id.* (quotes omitted), as long as at least one Plaintiff has standing to seek an injunction, *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 682 n.32 (9th Cir. 2022). There is no predominance and no cohesiveness requirement for a Rule 23(b)(2) class. *Bush*, 2024 U.S. Dist. LEXIS 20131, at *16-18. And "questions of manageability and judicial economy are irrelevant." *Id.* (internal quotes omitted).

Here, Plaintiff seeks to enjoin Tuft & Needle's from continuing to advertise fake discounts. FAC ¶57; Chebul Decl., ¶6. And that single injunction would provide relief to each member of the class: it would stop the practice that misled each class member, and allow each class member to trust Tuft & Needle's price-and-discount advertising going forward. *Cf.* Chebul Decl., ¶6.

**VIII.    Conclusion.**

The Court should certify the class under Rule 23.

Dated: July 8, 2025                              Respectfully submitted,

                                       By: */s/ Richard Lyon*
                                       Richard Lyon (Cal. Bar No. 229288)
                                       rick@dovel.com
                                       Simon Franzini (Cal. Bar No. 287631)
                                       simon@dovel.com
                                       Martin Brenner (Cal. Bar No. 333540)
                                       martin@dovel.com
                                       DOVEL & LUNER, LLP
                                       201 Santa Monica Blvd., Suite 600
                                       Santa Monica, California 90401
                                       Telephone: (310) 656-7066
                                       Facsimile: (310) 656-7069

                                       *Attorneys for Plaintiff*

## **CERTIFICATION OF COMPLIANCE WITH WORD LIMITATION**

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 6,874 words, which complies with the word limit of L.R. 11-6.1.

Dated: July 8, 2025                               Respectfully submitted,

By: */s/ Richard Lyon*
Richard Lyon